# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERELL M. JAMISON,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| | : | **NO. 09-1289** |
| | : | |
| **TROPPER KEPPEL, et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                                    **May 10, 2013**

This is an action pursuant to 42 U.S.C. § 1983.[1] Sherell Jamison contends that Trooper Christopher Keppel of the Pennsylvania State Police violated her Fourth Amendment right to be free from unreasonable seizures. Am. Compl. ¶¶ 20-21.[2] Before me is Trooper Keppel's motion for summary judgment. For the following reasons, I will grant the motion.

---

[1] "Section 1983 authorizes a person to file a private cause of action against state actors for a deprivation of rights protected by a federal statute or the United States Constitution." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).

[2] I note at the outset claims and parties that are not before me. Ms. Jamison argues in opposition to Trooper Keppel's motion that he unlawfully searched her vehicle and that he maliciously prosecuted her; however, these claims are not properly before the court because they were not raised against Trooper Keppel in the amended complaint. Brown v. Dow, CIV. 08-4330 RMB/AMD, 2011 WL 5080179, at *1 (D.N.J. Oct. 25, 2011) ("Claims that were not alleged in the complaint cannot be raised for the first time in opposition to a motion for summary judgment."). As indicated, the only claims against Trooper Keppel contained in the amended complaint are for false arrest and false imprisonment. Am. Compl. ¶¶ 20-21.
  Ms. Jamison also alleges that a Jane Doe defendant unlawfully strip searched her. Id. ¶ 22. "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (citations omitted). Ms. Jamison never sought leave to file a second amended complaint or otherwise identify the Jane Doe defendant. The Jane Doe defendant is therefore dismissed pursuant to Federal Rule of Civil Procedure 21.

## I. BACKGROUND[3]

On July 5, 2007, officers from the York City Police Department and the Pennsylvania State Police, including Trooper Keppel, arranged for a confidential informant to purchase over three ounces of cocaine from Abdullah Jamison, Ms. Jamison's brother. The parties agreed to meet near Ms. Jamison's house, at the intersection of Pershing Avenue and Front Street in York, Pennsylvania. Mr. Jamison arrived at the agreed-upon location and was arrested, but police found no drugs on his person or in his car.

Soon thereafter, Trooper Keppel and Corporal Barton Seelig[4] observed a van, driven by Ms. Jamison, leaving the area where Mr. Jamison was arrested. Trooper Keppel and Corporal Barton followed the van, which stopped in an alleyway directly behind Mr. Jamison's house. Mr. Jamison's house was under surveillance in connection with the arranged sale, and police were awaiting a warrant to search it. Ms. Jamison exited the van and began walking toward Mr. Jamison's house. Trooper Keppel and Corporal Barton approached, and Ms. Jamison identified herself as Mr. Jamison's sister. According to Trooper Keppel and Corporal Barton, Ms. Jamison began yelling toward Mr. Jamison's house and at the officers on scene.[5] Ms. Jamison took out her phone and

---

[3] The facts in this section are gleaned from the parties' statements of material facts, viewed in the light most favorable to Ms. Jamison as the non-movant.

[4] Ms. Jamison's claims against Corporal Seelig were dismissed with prejudice on September 30, 2010. Doc. No. 48.

[5] Ms. Jamison purports to dispute that she was yelling, but she cites no record evidence in support. Doc. No. 73 ¶¶ 25-27. Oddly, the only citation following Ms. Jamison's denial of this fact is to the portion of Trooper Keppel's deposition in which he testified that she was yelling toward Mr. Jamison's house and at the officers on

attempted to place a call, but Trooper Keppel took the phone before she could do so. Fearing that Ms. Jamison was attempting to warn the house's occupants of the impending search, and after she refused to stop yelling, Trooper Keppel handcuffed her. An unknown officer placed Ms. Jamison on the curb. Trooper Keppel last saw Ms. Jamison roughly two hours later, following the search of Mr. Jamison's house,[6] in the back of a York City Police cruiser.[7] Ms. Jamison was later released without being charged.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is

---

scene. Because Ms. Jamison failed to properly address this fact in accordance with Federal Rule of Civil Procedure 56(c), I treat it as undisputed for the purpose of Trooper Keppel's motion. Fed. R. Civ. P. 56(e)(2).

[6] Evidence obtained in the warrantless search of Mr. Jamison's house was later suppressed. Com. v. Jamison, 984 A.2d 1015 (Pa. Super. Ct. 2009).

[7] The parties dispute what happened following the search. Ms. Jamison alleges in opposition to Trooper Keppel's motion that he unlawfully searched her van. Trooper Keppel flatly denies any knowledge of or involvement in the search Ms. Jamison's van. Because the amended complaint includes no cause of action against Trooper Keppel for the allegedly unlawful search of Ms. Jamison's van, these facts are immaterial, as are Ms. Jamison's allegations that she was later strip searched at the York City Police station by the Jane Doe defendant.

genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. The non-moving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## III. DISCUSSION

The sole claims before me are those under the Fourth Amendment for false arrest and false imprisonment against Trooper Keppel. Am. Compl. ¶¶ 20-21.[8] Lack of

---

[8] Although not addressed by the parties, I assume these claims are brought against Trooper Keppel in his individual capacity, since "Eleventh Amendment immunity protects the Pennsylvania State Police and [its] troopers

4

probable cause is a required element of both claims. McNeil v. City of Easton, 694 F. Supp. 2d 375, 390 (E.D. Pa. 2010) ("[P]laintiff's claims for false arrest [and] false imprisonment . . . must necessarily fail if the defendant officers had probable cause to arrest him."). Trooper Keppel is therefore entitled to summary judgment if he had probable cause to arrest Ms. Jamison.

"An arrest by a law enforcement officer without a warrant 'is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). "To determine whether an arrest is valid, we look to the law of the state where the arrest took place." Wright, 409 F.3d at 601. Because "[p]robable cause need only exist as to any offense that could be charged under the circumstances," Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994), the analysis should not be approached "with too narrow a focus," Tate v. W. Norriton Twp., 545 F. Supp. 2d 480, 487 (E.D. Pa. 2008).

Trooper Keppel testified that in his opinion, there were "a few things [Ms. Jamison] could have been charged with." Keppel Dep. at 59. He identified disorderly conduct as one possible offense. Under Pennsylvania law, "[a] person is guilty of

---

. . . in their official capacities" and no exception applies here. Luck v. Mount Airy No. 1, LLC, 3:12CV887, 2012 WL 4747475, at *8 (M.D. Pa. Oct. 4, 2012).

disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. Cons. Stat. Ann. § 5503(a).

Based on the undisputed facts, Trooper Keppel had probable cause to arrest Ms. Jamison for violating § 5503(a)(4). Trooper Keppel and Corporal Seelig observed Ms. Jamison leaving the scene where Mr. Jamison had just been arrested for attempting to sell over three ounces of cocaine. She pulled into an alleyway directly behind Mr. Jamison's house, which officers on scene were awaiting a warrant to search. She exited her vehicle, identified herself as Mr. Jamison's sister, and began approaching Mr. Jamison's house. When confronted by Trooper Keppel and Corporal Seelig, she began yelling "directly at [Mr. Jamison's] house." Keppel Dep. at 31. Trooper Keppel "advised her not to scream at the residence" but she continued doing so. Id. at 30-33. Ms. Jamison took out her cell phone and attempted to place a call, but Trooper Keppel grabbed the phone before she could do so. Id. at 33-34. Eventually, "her focus turned from yelling at the house to yelling at [the officers on scene, including Trooper Keppel]." Id. at 33. Only after "she continued to keep yelling" did Trooper Keppel handcuff her. Id. Trooper Keppel and Corporal Seelig both testified that they believed Ms. Jamison was trying to get the attention of the house's occupants. Id. at 31; Seelig Dep. at 25. Trooper Keppel in particular felt that Ms. Jamison "was trying to warn the residents after she was told not

6

to" and that "she was a threat because [he] didn't know what was in that house." Keppel Dep. at 59, 74; see also id. at 75-76 ("The fear I was concerned about [was] that she was going to tip off whoever was in the residence and they might be armed and know we're coming in at them.").

Under these circumstances, Trooper Keppel could have reasonably believed that Ms. Jamison "create[d] a hazardous . . . condition . . . with intent to cause public inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof." § 5503(a)(4). "A hazardous condition is one that 'involves danger or risk,' particularly situations raising the possibility of injuries from public disorder." Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 625 (E.D. Pa. 2011) (quoting Com. v. Williams, 574 A.2d 1161, 1164 (1990)). Ms. Jamison's confrontation with Trooper Keppel and Corporal Seelig took place in a neighborhood alleyway directly behind a house which was actively and covertly being surveilled by officers awaiting a search warrant. § 5503(c) (defining "public" as "affecting or likely to affect persons in . . . any neighborhood"). There is no question that Trooper Keppel reasonably perceived Ms. Jamison's conduct as "creat[ing] a significant risk or danger of injury" to the officers surveilling the house and executing the search, to the occupants of the house, to any bystanders, and to herself. Williams, 574 A.2d at 1164. Trooper Keppel had probable cause to charge Ms. Jamison with disorderly conduct,[9] and he is therefore entitled to summary judgment.[10]

---

[9] Trooper Keppel also had probable cause to arrest Ms. Jamison for obstructing the administration of law. "A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act." 18 Pa. Cons. Stat. Ann. § 5101. A person who informs another that he is the target of an impending police search obstructs the administration of law by "physical interference." Com. v.

7

## IV. CONCLUSION

For the foregoing reasons, Trooper Keppel's motion for summary judgment is granted.

An appropriate order follows.

---

Snyder, 60 A.3d 165, 175-77 (Pa. Super. Ct. 2013). Even if Ms. Jamison had not been yelling toward Mr. Jamison's house, and certainly if she had been, given all the facts and circumstances known to Trooper Keppel at the time of Ms. Jamison's arrest—namely, the location she was observed traveling from, her relation to Mr. Jamison, her physical approach to Mr. Jamison's house, and her attempt to place a phone call after being denied entry—Trooper Keppel's belief that Ms. Jamison was attempting to warn the house's occupants of the impending search was reasonable.

[10] Because I find that no constitutional violation occurred, I do not reach the parties' arguments regarding qualified immunity.